WILSON, J., for the Court:
¶,1. Theresa McNair had two workers’ compensation claims, one arising from a 20Ó8 injury and the other from a 2012 injury. Attorney Jay Foster represented McNair on her first injury; he filed a signed fee agreement with the Workers’ Compensation Commission and has been paid for his work on that claim. This appeal involves the second claim. Foster asserts that he represented McNair on that claim too; however, he never filed a new or amended fee agreement with the Commission but instead resubmitted his prior agreement, which was signed two and a half years before the second injury and refers to representation concerning a singular “accident.” McNair denies that she ever authorized Foster to represent her on the second claim. In fact, before the Commission, she maintained that she told Foster soon after the second injury occurred that she did not need or want him -to represent her on that claim. The ■ Commission denied Foster’s claim for attorney’s fees related to the second claim, finding that he failed to meet his burden of proof that he was ever authorized to represent McNair on that claim. After the '-Commission;had-also denied his motion for reconsideration, Foster appealed. The Commission’s decision is supported by substantial evidence, was neither arbitrary nor capricious, and violated no constitutional or statutory rights. Therefore, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2; Attorney Jay Foster represented Theresa McNair on a workers’-compensation claim for a neck and back injury that occurred on May -24, • 2008 (MWCC No. 0805726-K-6852). In that case, Foster filed a “Retainer Agreement” with the Commission. The Retainer Agreement -was signed by McNair, dated August 5, 2009, and stated at the outset: “I/we hereby retain the services of Jay Foster, P.L.L.C.; to represent me/us in my/our claim for, and to recover by suit and/or settlement, damages as a result of my/our accident.” Foster eventually filed a petition to controvert on behalf of McNair, discovery ensued, and Foster and counsel for the employer/carrier engaged in settlement discussions.
¶3. However, before her 2008 claim could be resolved, McNair returned to work, and on February 17, 2012, she slipped and fell on the job, re-injuring her neck, in addition to other injuries. The employer/carrier admitted compensability and began paying temporary total disability benefits (MWCC No. 1202209-M-3856).
¶4. Based on correspondence between counsel, it appears that by the time McNair’s second injury had occurred, the parties were close to resolving her claim related to her 2008 injury. However, on March 14, 2012; counsel for the employer/carrier wrote to Foster that “it ha[d] recently come to [his]' attention that [McNair] ha[d] sustained a hew injury to the same body part involved in the [2008] case” and that any settlement would have to cover the new injury as well. Foster agreed to an order consolidating the two cases and continued to engage in settle *569 ment discussions with counsel for the employer/carrier.
¶ 5. On July 1, 2013, Foster filed a petition to controvert related to McNair’s February 17, 2012 injury. He also re-filed the same August 5, 2009 Retainer Agreement that McNair had signed in connection with her first claim. Two weeks later, however, Foster moved to withdraw from the case, stating: “A conflict has arisen in this matter which cannot be resolved.” In the same motion, Foster requested a lien for attorney’s fees and expenses of $15,114.75 against any workers’ compensation benefits awarded to McNair. The administrative judge granted the motion and stated that a lien in that amount would be “noted of record and ... given further consideration, if necessary, at the appropriate time.” .
' ¶ 6. In September 2013, McNair and the employer/carrier jointly petitioned for approval of a settlement. of $60,000, with $20,000 apportioned to McNair’s 2008 injury and the remaining $40,000 apportioned - to her 2012 injury. In the petition, McNair acknowledged Foster’s pending claim for fees and expenses, but she denied that Foster represented h'er in connection with the 2012 injury and denied that he was entitled to any fees related to that claim. McNair and the employer/carrier therefore agreed that $15,114.75 would be withheld from her settlement payment pending resolution of Foster’s claims, and the settlement was approved on that basis.
¶ 7. Foster then filed a motion seeking payment of $15,114.75 in fees and expenses, argüing that he had represented McNair on both claims. Foster’s motion' repeatedly asserted that there were “many” emails between him and McNair that would support his claim; however, with the exception of two emails from Foster to a yahoo.com email address that, according to Foster’s brief,' belonged to McNair, these emails are not in the record. According to Foster, they were not submitted as evidence because their disclosure would violate the attorney-client privilege.
¶ 8. Following a telephonic hearing, the administrative judge sided with Foster and entered an order stating that based on “[t]he paperwork in the Commission file,” “Foster clearly did represent ... McNair in the second claim, and he filed the petition to controvert on her behalf and negotiated the settlement of both claims.” Based on the terms of the August 2009 Retainer Agreement and Mississippi Code Annotated section 71-3-63 (Supp.2014), the administrative judge awarded Foster $15,000 (i.e., twenty-five percent of McNair’s total settlement).
1f9. McNair appealed the administrative judge’s ruling to the Commission; In her pro se petition, McNair asserted that- she told Foster ’soon after her 2012 injury that she did not need his assistance with any claim related to the new injury and that she dealt directly with the adjuster and counsel for the employer/carrier regarding her new claim. McNair also asserted that she had emails from Foster that would support her position, but she did not attach the emails either. Foster filed a response to McNair’s petition that repeated the assertions and arguments made in his summary judgment motion.
¶ 10. - The Commission found that “Foster failed to meet- his burden of proof to establish that he represented [McNair] on her second ... claim” and, therefore, amended the administrative judge’s- ruling to reduce1 Foster’s fee award to $5,000 (i.e., twenty-five percent of the portion of the settlement attributable to the first injury). The Commission reasoned as follows:
Foster argues that [McNair] is bound by the attorney fee contract that she signed in August 2009, more than.two and a half years before her second injury.... *570 The Commission ... finds that the language of the contract does not definitively demonstrate that ... Foster represented [McNair on the second claim]. The contract refers to “accident” in the singular manner. In this matter, two separate accidents are alleged, with two petitions to controvert filed, and separate amounts agreed to in the settlement documents. The second of these accidents occurred after [McNair] signed the attorney fee contact. We do not find this contract is evidence of an attorney/client relationship concerning the second claim because it was signed two and a half years before the accident even occurred.
¶ 11. The Commission also rejected Foster’s reliance on undisclosed emails between him and McNair:
Further, ... Foster asserts that he communicated with [McNair] via email concerning settlement of the second claim. However, these emails were not entered into evidence. These emails were not presented before the Commission, and the Commission therefore cannot rely on these emails as proof because there is no record of the occurrence of the emails or the substance of the alleged emails.
¶ 12. The Commission concluded, “The issue before us is not whether ... Foster’s work justified the lien asserted, but rather what proof he has presented to the Commission that meets his burden to demonstrate he was authorized to represent the Claimant on her second injury.” The Commission found that Foster had not met his burden, primarily because he “ha[d] not produced any emails concerning the second injury,” and “[t]he contract entered' into evidence predates the injury by two and a half years and refers to a singular ‘accident.’ ” The Commission further noted McNair’s contention “that she did not hire [Foster] for the second injury because it was an admitted injury, and the [e]mployer/[c]arrier immediately began paying temporary benefits and medical treatment.” (The employer/carrier filed a notice of first payment of temporary total disability payments within one month of the accident.) Because Foster did not meet his burden of proof, the Commission reduced his fee to $5,000.
¶ 13. Foster then filed a motion to reconsider. His motion attached a handwritten letter that McNair had faxed to him on July 8, 2013. McNair addressed the letter “to whom it may concern” and informed Foster that she “no longer need[ed][his] service and that’s in reference to my accident on 5/24/08 as well as 2/17/12.” Foster argued that the letter was an admission by McNair that he represented her on the second claim because she could not fire him if he did not first represent her. Foster also attached, for the first time, his time records related to the claim, which he asserted proved his entitlement to fees. The Commission denied Foster’s motion, and Foster now appeals.[1]
STANDARD OF REVIEW
¶ 14. In appeals from the Workers’ Compensation Commission, “[t]his Court’s review ‘is limited to determining whether the Commission’s decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated ... constitutional or statutory rights.’ ” Pulliam v. Miss. State Hudspeth *571 Reg’l Ctr., 147 So.3d 864, 868 (¶ 16) (Miss.Ct.App.2014) (brackets omitted) (quoting Gregg v. Natchez Trace EPA, 64 So.3d 473, 475 (¶ 8) (Miss.2011)). “ ‘[T]he Commission is the ultimate fact-finder ... therefore, we ‘may not reweigh the evidence that was before the Commission.’ ” Id. (brackets omitted) (quoting Gregg, 64 So.3d at 475 (¶ 8)). “When the Commission’s decision is supported by substantial evidence, ... it must be upheld. This remains true even though we might have reached a different conclusion were we the trier of fact.” Parker v. Ashley Furniture Indus., 164 So.3d 1081, 1084 (¶ 11) (Miss.Ct.App.2015) (quoting Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1164 (¶ 15) (Miss.Ct.App.2010)).
ANALYSIS
I. The Commission’s decision can be affirmed despite McNair’s failure to file a brief on appeal.
¶ 15. McNair failed to file a brief in this Court, even after the clerk sent her a show cause notice. Foster then filed a motion asking the Court to sanction McNair, treat her failure as a confession of error, and summarily reverse the Commission’s decision. We carried Foster’s motion for consideration with the merits of the appeal. In this situation,
this Court has two options. First, we may take the appellee’s failure to file a brief as a confession of error and reverse. This option is favored when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error. However, if the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed, we may disregard the appellee’s error and affirm.
Archie v. City of Canton, 92 So.3d 1279, 1282 (¶ 10) (Miss.Ct.App.2012). (alteration omitted) (quoting Thornton v. Holloway, 49 So.3d 125, 128-29 (¶ 10) (Miss.Ct.App.2010)). The record in this case is not large, the appeal raises no novel issues, and the Commission clearly explained the basis of its decision. Accordingly, we will disregard McNair’s failure to file a brief and decide the appeal on the merits.
II. The Commission’s decision is supported by substantial evidence.
¶ 16. As noted above, the Commission determined that Foster failed to meet his burden of proving that he was ever authorized to represent McNair on her second claim[2] for the very basic reasons that (1) the contract on which he relied referred to a singular “accident” (and “claim”) and was executed over two and a half years before the injury that gave rise to the second claim, and (2) Foster relied extensively on his own characterizations of alleged emails that he never presented to the Commission. We agree. Even without resort to the rule that the contract must be interpreted in favor of McNair and against Foster (see footnote 1), there is simply no reason to interpret a 2009 contract that references a singular “accident” to cover an injury and *572 claim that did not arise until 2012. The 2009 contract plainly relates to the 2008 accident, not the accident that occurred in 2012.
¶ 17. The Commission also appropriately declined to accept as evidence assertions in Foster’s briefs about the content and significance of alleged emails from McNair that Foster never presented to the Commission. The Commission’s “evidentiary standards are relaxed,” Short v. Wilson Meat House LLC, 36 So.3d 1247, 1255 (¶ 36) (Miss.2010), but they are not that relaxed. Rather, before the Commission, “the general rules of evidence shall be relaxed so as to permit the introduction of any relevant and competent evidence.” Miss. Workers’ Compensation Comm’n Procedural Rule 8 (emphasis added) (Miss. Admin. Code § 20-2-1:2.8). Foster’s unsupported assertions simply aré not “competent evidence.”
¶ 18. As noted above, Foster repeatedly asserted that he was not disclosing these emails because they were privileged. However, Mississippi Rule of Evidence 502(d)(3) specifically “permits the use of statements made between a lawyer and his client when a controversy later develops between them, such as in a dispute over attorney’s fees ....” M.R.E. 502 cmt. (emphasis added). Our Rules of Professional Conduct recognize the same exception to the attorney’s confidentiality obligation. Miss. R. Profl Conduct 1.6(b)(5) & cmt. (“A lawyer entitled to a fee is permitted by paragraph (b)(5) to prove the services rendered in an action to collect it.”). Thus, there was no ethical or legal barrier to introduction of these emails, if they supported Foster’s claim. The Commission properly found that Foster’s bare assertions about the emails’ existence and contents were not evidence or proof of anything.[3]
¶ 19. Finally, we address Foster’s argument that McNair “admitted” that he represented her on both claims because she fired him on both claims in her handwritten letter of July 8, 2013. McNair’s letter originally was attached to the petition for approval of the settlement filed by her and the employer/carrier, but Foster did not cite it or make this argument until his motion to reconsider. In any event, the argument is without merit. McNair’s short letter “to whom it may concern” makes clear that she does not want Foster to represent her, but it does not admit that he was ever authorized to represent her on the second claim.
III. Foster is not entitled to recover in quantum meruit.
¶ 20. Foster’s alternative argument that he is entitled to recover under a quantum meruit claim or some other equitable doctrine also fails. The “essential elements of recovery under a quantum me-ruit claim” are:
(1) valuable services were rendered or materials furnished;
(2) for the person sought to be charged;
(3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and
(4) under such circumstances as reasonably notified [the] person sought to be charged that plaintiff, in performing such services, was expected to be paid by [the] person sought to be charged.
*573 In re Wilhite, 121 So.3d 301, 305 (¶9) (Miss.Ct.App.2013) (quoting Tupelo Redevelopment Agency v. Gray Corp., 972 So.2d 495, 514-15 (¶56) (Miss.2007)).
¶ 21. Even setting aside for' purposes of this appeal the question whether Foster presented any competent evidence to support the first three elements of the claim, there was. no competent evidence before the Commission that Foster rendered services “under such circumstances as reasonably notified [McNair] that [Foster] ... expected to be paid” for services related to her second claim. Id.; see also id. at (¶ 10) (“[T]he fatal flaw in [attorney’s] quantum merit claim ... [was]'the absence of a reasonable expectation of payment .... ”). For reasons we have already discussed, there was no competent evidence before the Commission to support a reasonable expectation of payment on Foster’s part or reasonable notice to McNair that payment was expected. The 2009 fee agreement cannot supply the necessary proof because, as the Commission found, it cannot be interpreted to apply to an injury that occurred two and a half years later. Nor can alleged emails from McNair because they were never presented to the Commission and, thus, are not part of the record.[4] Because there is no evidence to support an “essential element” of Foster’s quantum meruit claim, he is not entitled to recover on that basis.
IV. Foster is not entitled to recover under the Workers’ Compensation Law or the Commission’s Procedural Rules.
¶ 22. Foster also argues that he is entitled to recover under the Workers’ Compensation Law and the rules of the Commission because he re-filed the 2009 fee agreement with the Commission in July of 2013, at the same time he filed a petition to controvert regarding' McNair’s 2012 injury. On the issue of attorneys’ fees, the Workers’ Compensation Law provides in part:
No claim for legal services ... rendered in respect of a claim or award for com: pensation, to or on account of any person, shall be valid unless approved by the commission.... Any claim so approved shall, in the manner and to the extent fixed by the commission ..., be a .lien upon such compensation.
Miss.Code Ann. ’§. 71-3-63(1). The Commission’s Procedural Rules, in turn, provide:
Absent objection from the claimant, submission by the attorney of his or her contract of employment to the Commission and acknowledgment of this filing from the Commission shall be considered approval by the Commission of the fee arrangemént set\forth therein, subject to the fee limits established by section 71-3-63 of the Law.
Miss. Workers’ Compensation Comm’n Procedural Rule 12 (Miss. AdmimCode § 20-2-1:2.12).
■ ¶ 23. Neither the statute nor Rule 12 supports Foster’s .claim. The record is unclear regarding “acknowledgment” of Foster’s 2013 re-filing of the 2009 fee agreement. The record, contains a September 2014 acknowledgment from the Commission, which does not make sense *574 given that the Commission had already denied Foster’s claim for fees by that point. In any event, McNair made an adequate “objection” under the circumstances — both directly to Foster, which led to his withdrawal from the case only two weeks after he filed his fee agreement, and also in her petition to approve her settlement, which expressly stated that she disputed Foster’s claim. Thus, Foster’s reliance on the statute and Rule 12 is misplaced.
¶ 24. Foster also asserts that he is entitled to fees because Mississippi Code Annotated section 71-3-63(3) provides that “[i]n all instances, fees shall be awarded on the basis of fairness to both attorney and client.” Foster emphasizes the word “all,” but nothing in the statute requires payment to an attorney when, as in this case, the attorney lacks a valid contract for the claim at issue and presents no competent evidence that the claimant ever requested his services in connection with the claim at issue. Accordingly, the Commission’s decision denying Foster’s claim for fees related to McNair’s second injury was entirely consistent with the Workers’ Compensation Law.
CONCLUSION
¶25. An attorney who represents an injured worker on a second work-related injury and second claim for compensation should file an amended or new fee agreement with the Commission. We concur with the Commission that the agreement at issue in this case simply cannot be interpreted to apply to an injury and claim that arose two and a half years later. Further, we agree with the Commission that Foster presented no competent evidence that McNair desired or requested his services in connection with her second claim. Even under the relaxed evidentiary rules applicable to proceedings before the Commission, counsel’s assertions about documents not contained in the record are not a substitute for actual evidence. Accordingly, we affirm the decision of the Commission.
¶ 26. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. ISHEE.J., NOT PARTICIPATING.

. Foster initially filed two notices of appeal, one for each of McNair’s claims before the Commission. However, he subsequently moved to dismiss the appeal related to the 2008 claim, acknowledging that the Commission properly granted his attorney’s fees in that case. We granted Foster’s motion and dismissed that appeal.

. "The burden is upon the attorney to establish clearly the contract under which he is entitled to ... fees.” In re Estate of Sparkman, 639 So.2d 1258, 1261 (Miss.1994). "A doubtful or ambiguous contract for professional services for the compensation of an attorney who drew it should be interpreted in favor of the client.” Id. (quoting Reid v. Johnson, 106 So.2d 624, 627 (Fla.Dist.Ct.App.1958) (quoting In re Irwin, 162 Or. 221, 91 P.2d 518, 523 (1939))).

. As noted above, Foster attached his time records to his motion to reconsider. However, Foster’s own time records were no more competent evidence of the contents of the emails than his own unsupported assertions, and the Commission was not obligated to consider this untimely-submitted evidence anyway. Short, 36 So.3d at 1254-55 (¶¶ 33-36) (affirming the Commission’s discretion to deny even a timely motion to supplement the record if the movant fails to state with particularity the reason that the evidence was not introduced before the administrative judge).

. Mason v. State, 440 So.2d 318, 319 (Miss.1983) (“We have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief, however sincere counsel may be in those assertions. Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them.”)'.